DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from judgments of conviction and sentencing on six counts of gross sexual imposition and six counts of rape issued by the Erie County Court of Common Pleas, following a jury trial. Because we conclude that appellant was not procedurally prejudiced and that the evidence supported his conviction, we affirm.
 {¶ 2} Appellant, Robert Adams, married Carrie Adams in 1995. She had two daughters from a previous marriage: the older was age fourteen at the time of the trial, the younger age thirteen. Appellant had two adult daughters from a previous marriage.
 {¶ 3} According to the older stepdaughter's testimony, appellant began sexually abusing her in 1996 when she was eight years old and the family lived in Huron County. After moving to Erie County in 1998, while she was still under age thirteen, she alleged that appellant began to have sexual intercourse with her. The younger stepdaughter testified that appellant started inappropriately touching her when she was nine years old and the family lived in Erie County. Both girls testified that the abuse continued until December 2001.
 {¶ 4} Appellant's older stepdaughter revealed the abuse to her step-sister in August 2002. The family confronted appellant. According to Carrie Adams, appellant admitted that he had been sexually abusing both girls. His wife asked him to turn himself in. Appellant's pastor gave him the number to Erie County Job and Family Services. The intake investigator at Job and Family Services testified that appellant called, saying that he wanted to report that he had been sexually abusing his step-daughters. The Vermillion Police Department was contacted, and appellant turned himself in.
 {¶ 5} The Erie County Grand Jury handed down a twelve count indictment against appellant. Counts one through six were for gross sexual imposition of his younger stepdaughter in violation of R.C. 2907.05(A)(4). Counts seven through twelve were for the rape of his older stepdaughter by force or the threat of force in violation of R.C.
 {¶ 6} 2907.02(A)(1)(b). Appellant was found guilty of all counts in a jury trial. He was sentenced to concurrent terms of four years for each count of gross sexual imposition. He was sentenced to life without the eligibility of parole for ten years for each count of rape. The sentences imposed for the first three counts of rape were to run consecutively. Sentences for the second three counts of rape were ordered to run concurrently. Appellant will not be eligible for parole for 34 years. This appeal followed.
 {¶ 7} Appellant sets forth the following five assignments of error:
 {¶ 8} "1. The trial court erred by not allowing the defense to voir dire the victims of an allege child rape when the state is unable to give times and dates of when the alleged offenses occurred."
 {¶ 9} "2. The trial court erred by not suppressing confidential statements made to a social worker pursuant to R.C. § 2317.02(G)(1) by the appellant."
 {¶ 10} "3. The Erie County trial court erred by not instructing the jury that they had to find beyond a reasonable doubt that the alleged crimes occurring in Huron County, Ohio was a course of conduct."
 {¶ 11} "4. Appellant's convictions are against the manifest weight and sufficiency of the evidence when the state presents a `fuzzy feeling of guilt' as opposed to proof beyond a reasonable doubt on each individual count of the indictment."
 {¶ 12} "5. The trial court erred by sentencing the defendant and by sentencing him to consecutive sentences."
 I. Specific Dates {¶ 13} In his first assignment of error, appellant maintains that he was prejudiced when the trial court overruled his motion to depose his stepchildren. Appellant's indictment listed only between, "August 1997 through September 2001" as the dates encompassing the allegations of rape of appellant's older stepdaughter and "from January 2000 through December 2001" for the gross sexual imposition counts involving his younger stepdaughter. Appellant insists that, absent more definite times for the alleged offenses, he was unable to develop alibi evidence supporting his innocence. Since the state was unable to provide more definite information in the bill of particulars, appellant contends, he should be allowed interrogate his stepdaughters about the exact dates of his alleged sexual contact and conduct with them.
 {¶ 14} Inexactitude in children's recollections involving psychologically traumatic sexual abuse is not unusual, even less so when there are multiple offenses spread over an extended period of time. State v. Barnecut (1988), 44 Ohio App.3d 149,152. Such inexactitude is not necessarily impermissible in an indictment unless precise times and dates are essential elements of the offenses charged. State v. Sellards (1985),17 Ohio St.3d 169, 171. The precise date and time is neither an essential element of gross sexual imposition nor of rape. See State v.Lawrinson (1990), 49 Ohio St.3d 238; State v. Krzywkowski, 8th Dist. No. 80392, 2002-Ohio-4438, at ¶ 129. If, however, the lack of such precise information truly prejudices an accused offender's ability to fairly defend himself, due process issues may be implicated. Id. at 172.
 {¶ 15} In State v. Lawrinson, supra, a defendant accused of gross sexual imposition demanded that the state include in its response for his request for a bill of particulars the precise date and time of his alleged misconduct. In considering the issue, the Supreme Court of Ohio set the following rule for analysis:
 {¶ 16} "A trial court must consider two questions when a defendant requests specific dates, times or places on a bill of particulars: whether the state possesses the specific information requested by the accused, and whether this information is material to the defendant's ability to prepare and present a defense. If these two questions are answered in the affirmative, then the state must include the information in the bill of particulars." (Citation omitted) Id. at 239.
 {¶ 17} Unlike the prosecution in Lawrinson, in this matter there is no evidence that the state possessed the precise dates and times of the alleged offenses. Consequently, the state had no obligation to provide information it did not possess.
 {¶ 18} With respect to appellant's ability to conduct his own search for such information by way of depositions of his accusers, R.C. 2945.50 vests the trial court with discretion to grant or overrule motions for pretrial depositions. State v.Hill (1967), 12 Ohio St.2d 88, paragraph one of the syllabus. The decision of the court in such matters will not be disturbed unless an abuse of discretion is shown. Id. The term "abuse of discretion" connotes more than an error of law or judgment, it implies that the court's attitude is unreasonable, arbitrary or unconscionable. State v. Myers, 97 Ohio St.3d 335, 348,2002-Ohio-6658, at ¶ 75.
 {¶ 19} In this matter the court had to balance the probability that subjecting the complaining witnesses to defense depositions would yield practical information with the real possibility that such interrogation would be, at best, a "fishing expedition" or, at worst, an exercise in intimidation. In hindsight, given the stepdaughters' trial testimony, it does not appear that such questioning would have resulted in the information appellant sought. Even without hindsight, it is clear that at the time appellant requested authority to depose his stepdaughters, the exercise presented a substantial potential for abuse. Given that, we cannot say that the trial court's decision to deny depositions was unreasonable. Accordingly, appellant's first assignment is not well-taken.
 II. Suppression. {¶ 20} Appellant, in his second assignment of error, asserts that the trial court erred when it denied his motion in limine and/or to suppress his statements to an intake investigator at Erie County Job and Family Services. According to appellant, these statements were either obtained in violation of his Fifth Amendment right against self-incrimination or are statutorily privileged.
 {¶ 21} Appellant's Fifth Amendment protection from compulsory self-incrimination arises only in the event that he is compelled to make incriminating statements. Garner v. United States
(1976), 424 U.S. 648, 653. If a statement is made freely and voluntarily, the Fifth Amendment is not violated. Id. at 654. Here, appellant called Job and Family Services upon his own free will and voluntarily admitted that he had been sexually abusing his stepdaughters. There is no allegation that he was ever compelled or duped by any government agency to speak. SeeGarner at 653. Since the statements made by appellant were voluntarily given, no Fifth Amendment protections were implicated. Furthermore, the privilege is not self-executing in this situation since appellant was not in custody at the time the statements were made. See Minnesota v. Murphy (1984),465 U.S. 420, 429.
 {¶ 22} R.C. 2317.02 relates to privileged communications and provides, in material part that, "The following persons shall not testify in certain respects: * * * (G)(1) * * * a person licensed under [R.C. 4757] as a professional clinical counselor, professional counselor, social worker, independent social worker, marriage and family therapist or independent marriage and family therapist, or registered under [R.C. 4757] as a social work assistant concerning a confidential communication received from a client in that relation or the person's advice to a client * * *." The statute expressly exempts from the privilege, however, communications that indicate a, "* * * clear and present danger to the client or other persons. For the purposes of this division, cases in which there are indications of present or past child abuse or neglect of the client constitute a clear and present danger." R.C. 2317.02(G)(1)(a).
 {¶ 23} The trial court concluded that the privilege never attached to appellant's statements because he was not a "client" of Job and Family Services. This is certainly a reasonable conclusion given the facts presented. Moreover, even had there been a privilege, the R.C. 2317.02(G)(1)(a) exception would apply.
 {¶ 24} Accordingly, appellant's second assignment of error is not well-taken.
 III. Venue. {¶ 25} In his third assignment of error, appellant complains that the trial court should have instructed the jury that, in order to find proper venue in Erie County, it must first find that those criminal acts he was accused of committing in Huron County were part of a course of conduct. The court's neglect in submitting this question to the jury was plain error, according to appellant.
 {¶ 26} Although venue must be established, it is not a material element of an offense and need not be expressly proven as long as it is established by all the facts and circumstances in the case. State v. Headley (1983), 6 Ohio St.3d 475, 477. Whether venue exists by virtue of proof of a course of conduct need not be submitted to a jury absent a conflict of testimony about the situs of the criminal acts. Absent such conflicting testimony, there is no question of fact for the jury to determine. See State v. Carpenter, 6th Dist. No. E-00-033, 2002-Ohio-2266; State v. Lydicowens (Nov. 22, 1989), 9th Dist. No. 14054.
 {¶ 27} Appellant did not object to the instructions the trial court submitted to the jury, nor did he suggest the language he now insists the court should have included in those instructions. A failure to timely object to jury instructions constitutes a waiver to the propriety of those instructions absent plain error. State v. Jackson (2001), 92 Ohio St.3d 436,444, 2001-Ohio-1266. A jury instruction does not constituteplain error unless the error would clearly affect the outcome ofthe trial. State v. Campbell (1994), 69 Ohio St.3d 38, 41; Statev. Long (1978), 53 Ohio St.2d 91, paragraph two of the syllabus.
 {¶ 28} In this matter, there was no conflicting testimony asto the situs of the offenses. Moreover, it is far from clear thathad the omitted instruction been given that the outcome of thetrial would have been affected. Accordingly, appellant's thirdassignment of error is not well-taken.
 IV. Weight and Sufficiency {¶ 29} In his fourth assignment of error, appellant asserts that his conviction is against the manifest weight of the evidence and not supported by sufficient evidence.
 {¶ 30} In a criminal context, a verdict or finding may be overturned on appeal if it is either against the manifest weight of the evidence or because there is an insufficiency of evidence. In the former, the appeals court acts as a "thirteenth juror" to determine whether the trier of fact lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered. State v. Thompkins (1997),78 Ohio St.3d 380, 387. In the latter, the court must determine whether the evidence submitted is legally sufficient to support all of the elements of the offense charged. Id. at 386-387. Specifically, we must determine whether the state has presented evidence which, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The test is, viewing the evidence in a light most favorable to the prosecution, could any rational trier of fact have found the essential elements of the crime proven beyond a reasonable doubt. Id. at 390 (Cook, J. concurring); State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus. See, also, Statev. Eley (1978), 56 Ohio St.2d 169; State v. Barns (1986),25 Ohio St.3d 203.
 {¶ 31} Appellant's principal complaint under this assignment is that the evidence presented did not cleanly and clearly match specific acts to specific counts in the indictment. This is a reiteration of his argument that, absent specific dates and times of offenses, sufficient evidence was not presented.
 {¶ 32} As we discussed above, specific times and dates are not essential elements of rape or gross sexual imposition. We have carefully reviewed the transcripts of the proceedings in this matter and conclude that there was evidence presented by which a reasonable juror could find beyond a reasonable doubt all of the essential elements of the offenses charged. Moreover, we find nothing in the record to suggest that the jury lost its way or that any manifest injustice would occur if appellant's conviction is affirmed.
 {¶ 33} Accordingly, appellant's fourth assignment of error is not well-taken.
 V. Consecutive Sentences. {¶ 34} Appellant asserts in his fifth assignment of error that he should not have been sentenced to consecutive sentences.
 {¶ 35} Three factors are required under R.C. 2929.14(E)(4) to impose consecutive sentences: the court must find consecutive sentences 1) are necessary to protect the public from future crime or to punish the offender; 2) will not be disproportionate to the seriousness of the offender's crimes; and, 3) that there exists one of the enumerated factors in R.C. 2929.14(E)(4)(a) through (c). In this case, appellant was sentenced under R.C.2929.14(E)(4)(b) which states at least two of the offenses were part of a continuing course of conduct and the harm caused was so great that no single prison sentence adequately reflects the seriousness of the conduct. The court must comply with R.C.2929.19(B)(2) by making statutory findings and articulating at the sentencing hearing its reasons for imposing consecutive sentences. State v. Comer, 99 Ohio St.3d 463, 2003 Ohio-4165, at ¶ 20.
 {¶ 36} Here, the court found that consecutive sentences are not disproportionate to the seriousness of the conduct and the danger appellant poses to the public. Additionally, the court found that the harm from appellant's offenses was so great that no single prison term would adequately reflect the seriousness of his conduct.
 {¶ 37} The record supports the court's findings and its conclusions are reasonable. Accordingly, appellant's fifth assignment of error is not well-taken.
 {¶ 38} On consideration whereof, the judgments of the Erie County Court of Common Pleas are affirmed. Costs to appellant as specified in App.R. 24.
Judgment Affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, P.J., Pietrykowski, J., Singer, J., Concur.